# In the
# United States Court of Appeals
## for the Seventh Circuit

JEFFREY DUBNOW,

*Plaintiff-Appellant,*

v.

DENIS R. MCDONOUGH, Secretary of Veterans Affairs,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois – Eastern Division, No. 1:19-cv-02423.
The Honorable **Virginia M. Kendall**, Judge Presiding.

## REPLY BRIEF OF PLAINTIFF-APPELLANT
## JEFFREY DUBNOW

JAMIE A. GLIKSBERG
MICHAEL D. FRISCH
CROKE FAIRCHILD
MORGAN & BERES LLC
180 North LaSalle Street
Suite 2750
Chicago, IL 60601
(312) 768-4700

ALAN W. NICGORSKI
HANSEN REYNOLDS LLC
150 South Wacker Drive
24th Floor
Chicago, IL 60606
(312) 265-2252

NEIL LLOYD
SCHIFF HARDIN LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
(312) 258-5500

*Counsel for Plaintiff-Appellant
Jeffrey Dubnow*



**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES..................................................................................................ii

INTRODUCTION ............................................................................................................. 1

I.       The Issues Are Properly Before the Court................................................................. 3

II.      The PDUSH Failed to Apply the "Clearly Contrary to the Evidence"
         Standard, Requiring Reversal, or at a Minimum, Remand...................................... 5

III.     The PDUSH Failed to Apply any Professional Standard of Care, Requiring
         Reversal. ............................................................................................................... 12

CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abaqueta v. United States,*
   255 F. Supp. 2d 1020 (D. Ariz. 2003) ...............................................................................10

*Barnett v. Barnhart,*
   381 F.3d 664 (7th Cir. 2004) ...............................................................................................18

*Brindisi v. Barnhart,*
   315 F.3d 783 (7th Cir. 2003) ...............................................................................................18

*Clifford v. Apfel,*
   227 F.3d 863 (7th Cir. 2000) ...............................................................................................12

*Doran v. Wilkie,*
   768 F. App'x 340 (6th Cir. 2019) .........................................................................................16

*Hively v. Ivy Tech Community College of IN.,*
   853 F.3d 339 (7th Cir. 2017) .................................................................................................5

*Kastner v. Astrue,*
   697 F.3d 642 (7th Cir. 2012) ...........................................................................................11, 18

*Leffler v. Meer,*
   936 F. 2d 981 (7th Cir. 1991) ..............................................................................................11

*Motor Vehicle Mfrs. Assn. of U. S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) ............................................................................................................11, 15

*Pocha v. McDonald,*
   No. CV 15-475, 2016 WL 916417 (D. Minn. Mar. 10, 2016) ............................................16

*Savu v. United States of America, et al.,*
   No. SA18CV00993JKPESC, 2021 WL 1615562 (W.D. Tex. Apr. 26, 2021) ............. *passim*

*United States v. Jaimes-Jaimes,*
   406 F.3d 845 (7th Cir. 2005) .................................................................................................3

*Ward v. Brown,*
   22 F.3d 51 (2d Cir. 1989) .......................................................................................................4

**Statutes**

38 U.S.C. § 7401(1) ...................................................................................16

38 U.S.C. § 7462 ...................................................................................15, 16

38 U.S.C. § 7462(a)(1) ...........................................................................15, 16

38 U.S.C. § 7462(b)(1)(A) ...........................................................................16

38 U.S.C. § 7462(d) .......................................................................................4

38 U.S.C. § 7462(d)(2) ..................................................................................4

38 U.S.C. § 7462(d)(2)(A) ....................................................................6, 7, 10

**INTRODUCTION**

In his opening brief, Dr. Dubnow showed why the VA's decision to terminate his

employment must be reversed or, at a minimum, remanded to the Principal Deputy

Undersecretary for Health (PDUSH) for reconsideration. First, Congress mandated a

special standard of review — "clearly contrary to the evidence" — that applies when

the PDUSH (under delegated authority from the VA Secretary) overturns a decision of

the Disciplinary Appeals Board (DAB) that in turn involves the exercise of professional

judgment. The PDUSH failed to apply the clearly contrary to the evidence standard in

this case, requiring reversal or at least a remand. Second, Congress gave the DAB

exclusive jurisdiction over the review of adverse personnel decisions involving a

specific set of professionals (like Dr. Dubnow) when the challenged conduct involves

the exercise of professional judgment, necessarily implicating the standard of care. The

PDUSH disregarded the standard of care, requiring reversal.

In its response brief, the VA does not quibble with the outcome-determinative

nature for this case of either the standard of review or of the standard of care (though it

incorrectly contends that Dr. Dubnow forfeited both arguments). Instead, the VA

focuses on a different outcome: how the patient whom Dr. Dubnow directed be

diverted to a Level II trauma center fared. On the VA's view of the statutory scheme,

the standard of review and the standard of care matter in inverse proportion to the

treatment outcome; the worse the outcome, the less the PDUSH is required to adhere to

either standard. And when the outcome is among the worst possible (as here; the child died), the VA contends that the PDUSH's decision must be upheld, provided there is any articulated reason for overturning the DAB, even when that reason entirely brushes aside both standards.

On the VA's view, mere disagreement between the PDUSH and the DAB ("reasonable minds can disagree," in the VA's formulation) is sufficient to satisfy the standard of review, even though in reality that is no review at all. Similarly, on the VA's view, mere disagreement over treatment decisions is sufficient to establish a complete lapse in professional judgment. If the VA were correct on the standard of review, then the PDUSH could cherry pick the evidence to drive reversal of the DAB without explaining (and therefore providing grist for a reviewing court) why that evidentiary selection was appropriate. And if the VA were correct on the standard of care, then any disagreement among professionals about treatment decisions would be enough to reverse the DAB. And that means that if Dr. Dubnow had decided to *admit* the patient (despite his judgment that the infant's cardiac arrest was likely trauma-related and that nearby Lake Forest Hospital with its trauma center was the best treatment option) and the patient had died in the VA's care, then Dr. Dubnow could have been fired for *not* diverting the infant to Lake Forest Hospital. Since diverting or not diverting were both options meeting the standard of care, the PDUSH (on the VA's view) could ignore the standard altogether and focus on the outcome.

Congress plainly saw things differently. For professionals like Dr. Dubnow, review of adverse personnel decisions by the DAB (including taking evidence) followed by review *of* that review by the PDUSH (under the "clearly contrary to the evidence" standard) in tandem offer significant employment protection. Similarly, adhering to the standard of care aligns with the well-settled understanding that there may be many compliant options for the exercise *of* professional judgment, so that when professionals' decisions are second-guessed, that second-guessing is based on whether they acted *as* a professional, not solely on the outcomes of their decisions.

For the reasons discussed below, the VA's contention that Dr. Dubnow forfeited either the standard of review or the standard of care arguments is incorrect. On the merits, the VA seeks rules of law that are both contrary to the Congressional scheme and which no reviewing court has adopted. After spending dozens of pages in its response on the undisputed tragic outcome, the VA paused to head-scratch, saying that "it is hard to know what Dubnow means here" concerning the standard of care. (Appellee Br. 33.) What this means is that the Court should reverse.

## I.      The Issues Are Properly Before the Court.

At the threshold, the VA contends that Dr. Dubnow "waived" (it means forfeited[1]) his arguments regarding the PDUSH's failure to apply the "clearly contrary to the evidence" standard of review and his failure to assess Dr. Dubnow's conduct against the

---

[1] *E.g. United States v. Jaimes-Jaimes*, 406 F.3d 845, 847 (7th Cir. 2005).

standard of care because Dr. Dubnow assertedly failed to present these arguments to the district court. The VA is incorrect.

Concerning the standard of review, Dr. Dubnow preserved the issue by repeatedly arguing to the district court that the PDUSH failed to properly apply Section 7462(d)'s "clearly contrary to the evidence" standard when he reversed the DAB's reinstatement recommendation. (D42 at 7-8, 12, 13-14, 22, 25, 29-30, 39.) Indeed, as the VA admits, the district court itself acknowledged that Dr. Dubnow had argued that "the only situation that permits the PDUSH to reverse the DAB decision is if the DAB decision is clearly contrary to the evidence."[2] (A-11.)

Despite this, the VA contends that Dr. Dubnow failed *to define* the "clearly contrary to the evidence" standard with the phrasing adopted by *Savu* (a decision filed months after Dr. Dubnow's district court brief). This is misguided. Dr. Dubnow argued to the district court that the PDUSH's decision was improper under the "clearly contrary to the evidence" standard unless the DAB's decision is "implausible in the light of the entire evidence of record." (D42 at 7-8.) This articulation of what "clearly contrary to the evidence" means is materially identical to the articulation in *Savu*: clearly contrary to the

---

[2] The district court did state that Dr. Dubnow made his standard of review argument "without support." But the primary support comes from the plain language of Section 7462(d)(2) itself. The district court overlooked this unique language, treating the case instead as one involving a garden variety administrative review. And even then, the court deferred to the PDUSH without conducting "the careful, thorough, and probing" review required under the law. *E.g. Ward v. Brown*, 22 F.3d 51, 521 (2d Cir. 1989).

evidence means a "conflict between the [DAB's] decision and the weight of the evidence … [that] would be obvious to an ordinary person." *Savu v. United States of America, et al.*, No. SA18CV00993JKPESC, 2021 WL 1615562, at *2 (W.D. Tex. Apr. 26, 2021).

As for the standard of care, Dr. Dubnow preserved the issue by arguing to the district court that the PDUSH failed to evaluate Dr. Dubnow's conduct under the applicable standard, as the VA also concedes. (D42 at 24-25, 33-34.) Specifically, Dr. Dubnow pointed to the PDUSH's failure to even acknowledge (much less to rebut) the DAB's finding that Dr. Dubnow's decision to divert the ambulance "met the community standard of the care." (*Id.*)

Additionally, the VA fails to articulate how getting the legal standards right would be prejudicial. The record is closed; the facts are undisputed. The Court's review of the PDUSH's decision is *de novo*. The issues before the Court are pure questions of law. And while, as shown above, the issues were clearly preserved, the Court has discretion in any event to reach the merits. *See Hively v. Ivy Tech Community College of IN.*, 853 F.3d 339, 351 (7th Cir. 2017) (when "proceeding on a de novo basis," the Court "often exercise[s]" discretion to address issues for first time on appeal "that turn on pure issues of law").

## II.    The PDUSH Failed to Apply the "Clearly Contrary to the Evidence" Standard, Requiring Reversal, or at a Minimum, Remand.

In his opening brief, Dr. Dubnow showed in detail that when the PDUSH reversed the DAB's decision to recommend that Dr. Dubnow be reinstated, the PDUSH did so without properly applying the "clearly contrary to the evidence" standard of

review, requiring a reversal or at a minimum a remand to the PDUSH to apply the correct standard. Nothing in the VA's response disturbs this conclusion.

There is no dispute concerning the governing legal standard. Specifically, the VA does not contest that this Court's review of the PDUSH's decision is *de novo*. (Appellee Br. 17.) Nor does the VA dispute either what the standard of review is (clearly contrary to the evidence) or what it means (*Savu*). Indeed, while the VA asserts forfeiture on the interpretive question (incorrectly, as discussed above), it fails to offer any competing interpretation. (Appellee Br. 21.) Accordingly, this Court should uphold the PDUSH's decision only if there was a "conflict between the [DAB's] decision and the weight of the evidence presented at the hearing [before the DAB that] would be obvious to an ordinary person." (Appellant Br. 16 (*citing Savu v. United States of America, et al.*, No. SA18CV00993JKPESC, 2021 WL 1615562, at *2 (W.D. Tex. Apr. 26, 2021))). As discussed in Dr. Dubnow's opening brief and below, there was no such conflict between the DAB's decision and the weight of the evidence.

Rather than dispute the legal standards, the VA brushes them aside, treating this case as if it were a garden variety administrative review matter. For example, the VA says that if a "rational basis existed for removing Dubnow," then the PDUSH's decision is "presumed valid." (Appellee Br. 10.) That is not the law. While the Court's review of the PDUSH's decision is deferential, that deference is necessarily informed by the standards that Congress put in place to govern the *PDUSH's* review. Under Section

7462(d)(2)(A), the PDUSH lacks the authority to reverse the DAB if all he has to point to is a "rational basis." Instead, the PDUSH is precluded from reversing the DAB *unless* its decision was "clearly contrary to the evidence or unlawful." 38 U.S.C. § 7462(d)(2)(A). Again, it wasn't.

To support the PDUSH's decision, the VA initially points to the same three pieces of evidence on which the PDUSH relied: (1) that the FHCC serves military families, (2) that the FHCC was equipped to handle pediatric emergencies and resuscitations, and (3) that Dr. Dubnow and his staff were certified in pediatric advanced life support. (Appellee Br. 21.) These facts are not in dispute; Dr. Dubnow stipulated to them. (A-18.) The question is whether these facts support reversal of the DAB's reinstatement decision under the clearly contrary to the evidence standard. Alone and collectively, none does.

As Dr. Dubnow showed in his opening brief, none of these facts conflicts with or undermines the DAB's conclusion that Dr. Dubnow's conduct fell within the standard of care, much less do they factually overwhelm the DAB's conclusion in a way obvious to an ordinary person. Indeed, the DAB fully appreciated that the FHCC had the equipment and staff certifications – it found that the FHCC ER "had the capacity to manage a pediatric arrest." (A-27.) That was not the point. The point was whether the *diversion* to a trauma center was defensible within the standard of care in light of the facts and circumstances. The DAB said that it was.

Specifically, the DAB did not believe that "a lack of capacity to manage a pediatric code was *the reason* Dr. Dubnow diverted the ambulance." (*Id*.; *see also* A-30-31; A-36.) That is, Dr. Dubnow did not divert the ambulance *because* he wanted to avoid a difficult case or because the FHCC lacked the minimum capacity to treat the patient.[3] Instead, the DAB found that Dr. Dubnow had concluded — based on his "clinical experience and the limited information that was presented by the ambulance dispatcher" — that the FHCC ED was not *the most appropriate facility* to treat the patient when compared to Lake Forest Hospital and that this conclusion fell within the standard of care. (*Id*.) The evidence supporting this finding was overwhelming. (*See* Appellant Br. 28-29).

The VA does not dispute that Dr. Dubnow in fact concluded that diversion was in the patient's best interest. Nor does the VA contend that Dr. Dubnow's conclusion

---

[3] The VA repeatedly implies that Dr. Dubnow callously turned away an infant in severe distress because he did not want to "deal" with a "hard case," painting him as heartless and indifferent. (Appellee Br. 2, 8, 22.) The record before the DAB comprehensively refutes this characterization of Dr. Dubnow and of his conduct. For example, the VA contends that Dr. Dubnow "told the ambulance, which had arrived at the hospital, to go to a nearby hospital instead. The baby died." (Appellee Br. 8.) Implicit in this assertion is the premise that Dr. Dubnow knew that the ambulance was at the FHCC, but then sent it away. Yet the VA stipulated at the evidentiary hearing before the DAB to precisely the opposite: the FHCC staff "lacked the ability to determine where the ambulance was at any time during the communication from the EMS squad to the ED on April 29, 2017." (A-18.) Another implicit premise is that Dr. Dubnow refused to treat the baby. On the contrary, as the VA also stipulated before the DAB, as soon as the FHCC team realized that the ambulance was already on site, they sprang into action, "immediately prepar[ing] to receive the patient and attempt a resuscitation." (*Id*.) Far from being indifferent to the infant's treatment, Dr. Dubnow "was presented with incomplete information delivered by stressed individuals in a highly irregular manner" and "subsequently acted immediately with the best interests of the patient in mind." (A-31.)

fell outside of the applicable standard of care. Nor does the VA show why the FHCC's treatment of military families, the presence of pediatric treatment equipment at the FHCC, or the pediatric certification of FHCC's staff (including Dr. Dubnow), alone or in combination undermined Dr. Dubnow's decision that, under the circumstances, a Level II trauma center would be a better treatment option for an infant in cardiac arrest (someone who had most likely suffered trauma) and that accordingly the ambulance should be diverted.[4]

At bottom, the VA does not show how the presence of the three facts that the PDUSH relied upon created a "conflict" between the DAB's finding that Dr. Dubnow's diversion decision was justified in the circumstances on the one hand and "the weight of the evidence presented at the hearing [that] would be obvious to an ordinary person" on the other. *Savu*, 2021 WL 1615562, at *2. There was accordingly no conflict supporting reversal under the clearly contrary to the evidence standard of review.[5]

As a fallback, the VA points to information in the record that it believes *would have* supported the PDUSH's decision under the clearly contrary to the evidence standard of review, even though the PDUSH did not rely on this evidence in his written decision.

_____

[4] Throughout its brief, the VA downplays Lake Forest Hospital's trauma certification, even though this certification was critical to Dr. Dubnow's in-the-moment decision making.

[5] While the ultimate outcome was unquestionably tragic, whether the patient lived or died is not relevant to the propriety of Dr. Dubnow's diversion decision (or to this appeal). The DAB recognized that "[g]ood and proper medical decisions sometimes end with bad results." (A-31.)

*First*, the VA cites statements in the record (though not in the PDUSH's decision) that Drs. Maldonado and Holt – respectively, the proposing and deciding FHCC officials for Dr. Dubnow's termination – thought that the ambulance diversion was a mistake. (Appellee Br. 23.) The DAB considered this testimony, discrediting it in favor of Dr. Dubnow's and Dr. Martin's testimony, along with other evidence in the record. (*Id.*; A-28-29.)[6] In particular, the DAB cited Dr. Maldonado's own testimony in which he *admitted* that Dr. Dubnow's diversion decision did *not* violate any standard of care. (A-28.)[7]

The VA characterizes the PDUSH's siding with one set of doctors over the ones whom the DAB credited as a "reasonabl[e] disagree[ment]." (Appellee Br. 23.) Not so. The VA's characterization confirms why reversal is necessary. Congress did not give the VA the authority to overrule the DAB when the PDUSH merely disagrees with its findings. Congress did not give the VA authority to overrule the DAB even when the PDUSH's disagreement with the DAB is assertedly "reasonable." Rather, the statute "limit[s] the ability to reverse the decision of a DAB by requiring application of the 'clearly contrary to the evidence' standard of review." *Savu*, 2021 WL 1615562, at *2; 38

---

[6] *See Abaqueta v. United States*, 255 F. Supp. 2d 1020, 1024 (D. Ariz. 2003) (DAB should be deferred to as trier of fact with opportunity to observe witness demeanor).

[7] Specifically, on cross-examination, Dr. Maldonado was asked whether "the infant incident" involved a failure by Dr. Dubnow to meet the standard of care. He replied, "No." (A-28.) In its brief, the VA offers no response.

U.S.C. § 7462(d)(2)(A).[8] And that in turn means that the weight of the evidence *against* the DAB's decision should be obvious to an ordinary person. Here, the weight of the evidence instead favored the DAB's decision, overwhelmingly. Dr. Maldonado's testimony that he would have made a different decision, but that Dr. Dubnow's decision fell within the standard of care, does not present an overwhelming evidentiary conflict under the clearly contrary to the evidence standard of review. Instead, this evidence supports the DAB's decision that Dr. Dubnow acted within the standard of care and should be reinstated.

*Second*, the VA points to handwritten notations in the margins of the PDUSH's copy of the DAB's ruling. (Appellee Br. 13, 24.) This is truly odd, legally and factually. It is odd legally because "meaningful judicial review" turns on the agency's written decision. *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The PDUSH issued a written decision; his reversal of the DAB rises or falls on what he wrote. Courts may not "make up for … deficiencies" in the agency's reasoning or "supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Assn. of U. S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal citation and quotation omitted). The VA's reliance on the notes is odd factually because we do not

---

[8] The VA's citation to *Leffler v. Meer*, 936 F. 2d 981, 984 (7th Cir. 1991), is inapposite for the same reason. (Appellee Br. 16.) The VA argues that "the fact that someone else might have reached a different conclusion is irrelevant to the abuse-of-discretion analysis," repeating again that the "PDUSH reasonably disagreed" with the DAB's view of the case. This argument presumes that the PDUSH had the statutory authority to "reasonably disagree" with the DAB, but he did not.

even know whose notes these are and here, on an appeal (to this Court) from an appeal (to the District Court) from an appeal (to the PDUSH), it would be inappropriate to speculate.

Confronted with a record that makes the clearly contrary to the evidence standard impossible to meet, the VA suggests that the PDUSH was not required to discuss "every piece of evidence" when deciding to reverse. Well, sure. What he was required to do was to "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). But that bridge cannot be built in the abstract — the PDUSH was constrained by the "clearly contrary to the evidence" standard of review and accordingly needed to explain *why* the DAB's reasoning was wrong and unsupported by the evidence. As discussed in Dr. Dubnow's opening brief and above, the PDUSH failed to do so, requiring reversal or at a minimum a remand to the PDUSH to review the DAB's decision under the clearly contrary to the evidence standard of review.

### III.    The PDUSH Failed to Apply any Professional Standard of Care, Requiring Reversal.

In his opening brief, Dr. Dubnow also showed — under a statutory scheme that provides the DAB with exclusive jurisdiction to review disciplinary decisions concerning the exercise of professional judgment — why it was critical that any reversal of the DAB's decision hinge on the conclusion that Dr. Dubnow's diversion decision fell below the applicable standard of care. But because there was no evidence in the record

that Dr. Dubnow's conduct fell below the standard of care (and indeed, the undisputed evidence was that his conduct *met* the standard of care), Dr. Dubnow argued that the Court should reverse the PDUSH's decision reversing the DAB.

In its response brief, the VA might, in theory, have attempted to show that Dr. Dubnow's conduct fell below the standard of care by pointing to conflicting evidence before the DAB concerning the standard of care. Armed with this evidence, the VA might then, in theory, have argued that it was appropriate under the clearly contrary to the evidence standard for the PDUSH to have accepted one articulation of the standard of care over another and that, under the articulation of the standard that the PDUSH had accepted, to have then determined that Dr. Dubnow's conduct missed the mark.

The reason this has remained only a theoretical possibility is that there was no conflicting evidence concerning the standard of care. The DAB said that Dr. Dubnow's conduct met the standard of care; Dr. Maldonado similarly testified that the diversion decision did not fall below the standard of care. Certainly there was conflicting testimony concerning the decision that individual physicians would have made in the circumstances (Dr. Dubnow ordered the diversion; Dr. Maldonado *post hoc* says that he would not have). But in a case of professional malpractice, it is not enough for one professional to say that she would have made a decision different than the challenged decision.

For example, in a legal malpractice case, a plaintiff cannot establish liability with evidence that the plaintiff's expert (confronted with the same facts and circumstances as the defendant attorney) would have made different decisions. Instead, the plaintiff's expert must first offer evidence concerning the standard of care — that is, the range of acceptable decisions. If the defendant attorney's decisions fell outside of the range, then the plaintiff's expert could opine that the defendant attorney's conduct failed to meet the standard of care. In contrast, if the defendant attorney's conduct fell within the range, then the defendant attorney met the standard of care, even though the plaintiff's expert would have exercised her own professional judgment differently — that is, selected different options within the acceptable range.

This scenario is precisely the one facing the VA. No one disputes that Dr. Dubnow could have made a different decision than the diversion decision that he made. No one disputes that Dr. Maldonado says that he would have made a different decision than Dr. Dubnow's. But that is no different from a plaintiff's expert in a legal malpractice case saying that she would have asked three more questions on cross-examination than the defendant attorney asked and, with the benefit of hindsight (as Dr. Maldonado had), expected a better outcome. In neither case is there professional malpractice *unless* there was a violation of the standard of care. Again, Dr. Maldonado could not have been clearer: while he disagreed with Dr. Dubnow's decision, when he

was specifically asked whether the diversion decision fell outside the standard of care, he said "no."

Rather than grapple with the standard of care, the VA contends that it was self-evident that "Dubnow's judgment was *wrong*," arguing that the PDUSH's reasoning was "hardly difficult to understand," irrespective of any reference to a standard of care. (*Id.* at 29-30 (emphasis in original).) But wrong based on what? Neither the VA's word choice nor its italics shed light on the standard of care.

To be sure (and to be clear), the PDUSH may have fervently believed that Dr. Dubnow's decision was wrong. Another PDUSH might have believed that Dr. Dubnow's decision was correct. But without tethering either belief to the standard of care, the belief in the rightness or wrongness of Dr. Dubnow's decision is purely subjective. And basing a decision on a subjective belief, regardless of how fervently or emphatically held is plainly arbitrary and capricious, particularly in a case concerning "professional conduct or competence" (38 U.S.C. § 7462(a)(1)).

The VA also contends that identifying and articulating a particular standard of care is unnecessary "when removing a physician from service for cause." (Appellee Br. 30.) But this is rhetoric masquerading as argument. Dr. Dubnow was not removed from service for cause because he failed a drug test, destroyed FHCC property, or physically threatened FHCC personnel — all presumably for-cause bases to terminate a physician, but none involving professional conduct or competence. Instead, this was a Section 7462

matter: that section is delimited to circumstances involving a "question of professional conduct or competence." 38 U.S.C. § 7462(a)(1). It would be impossible to evaluate whether a doctor's conduct met professional standards without receiving evidence on what those standards were and holding the doctor's conduct up against them. Unsurprisingly, given its exclusive jurisdiction to review Section 7462 matters, the DAB did precisely this.

The statutory requirement that a physician facing termination receive advance notice of "any specific law, regulation, policy, procedure, practice, or other specific instruction that has been violated with respect to each charge" (38 U.S.C. § 7462(b)(1)(A)) explicitly recognizes that a physician cannot be fired for professional misconduct or professional incompetence on the subjective whim of the agency, but rather must fall short of complying with an established rule, practice, or professional standard. Dr. Dubnow's demand that the PDUSH evaluate his termination in the light of an applicable standard of care is far from novel. Cases involving termination of Section 7401(1) employees typically involve a determination of what the standard of care was and why the employee failed to meet it. *See, e.g. Doran v. Wilkie*, 768 F. App'x 340, 345 (6th Cir. 2019)*; Pocha v. McDonald*, No. CV 15-475 (DWF/FLN), 2016 WL 916417, at *3 (D. Minn. Mar. 10, 2016).

The medical experts comprising the DAB received unrebutted testimony concerning the standard of care; the DAB defined the standard of care; and the DAB

concluded that Dr. Dubnow's conduct met the standard of care. (A-27-30) (the "community standard of care was met for this patient by the decision to redirect the ambulance.") The DAB noted that the VA "made no attempt to challenge the validity of [Dr. Dubnow's] assumption" that the "most likely etiology for this infant arrest was trauma," and thus had no basis to criticize Dr. Dubnow's decision on that ground. Again, even the administrator who proposed Dr. Dubnow's removal, Dr. Maldonado, admitted under cross-examination that he did not consider Dr. Dubnow's actions in diverting the ambulance to fall outside the standard of care. (A-28.)[9]

In his opening brief, Dr. Dubnow showed that the PDUSH failed to engage either with the DAB's conclusion that Dr. Dubnow's decision met the community standard of care or with Dr. Maldonado's testimony. Instead, the PDUSH set an arbitrary rule — irrespective of professional judgment and the facts of a particular case, Dr. Dubnow's decision to divert the patient to a Level II trauma center was a fireable offence because the FHCC had the minimum qualifications and the capability to treat the patient.

In his opening brief, Dr. Dubnow also set forth a detailed list of undisputed evidence bearing on the standard of care, all of which the PDUSH ignored in formulating his arbitrary rule. And Dr. Dubnow noted that an administrative decision-maker's failure to "consider the record as a whole and disregarded contrary evidence in

_____

[9] In its brief, the VA incorrectly suggests that Dr. Dubnow has tried to "pawn his responsibility for the diversion decision" off to his colleagues at the FHCC. (Appellee Br. 31.) Dr. Dubnow takes full responsibility for his decisions in this matter.

the record" warrants reversal. (Appellant Br. 28-29 (citing, e.g., *Kastner v. Astrue*, 697

F.3d 642 (7th Cir. 2012), *Barnett v. Barnhart*, 381 F.3d 664 (7th Cir. 2004), and *Brindisi v.*

*Barnhart*, 315 F.3d 783 (7th Cir. 2003)).

The VA contends that *Kastner* and *Barnett* are inapplicable because both involved

the denial of Social Security benefits, rather than VA employment matters. (Appellee Br.

31-32.) The VA overlooks the fact that both cases stand for general principles of

administrative law. The VA fails to explain why this Court should take a more relaxed

approach to reviewing agency action when it involves the firing of a doctor accused of

professional incompetence than when it involves the denial of social security benefits.

As for *Brindisi,* the VA says that the case involved the ALJ leaving out one strong piece

of evidence in the claimant's favor and that there is "no comparable piece of evidence in

this case." (Appellee Br. 32.) True enough: the PDUSH's failure here was not ignoring

*one* "smoking gun" that weighed in Dr. Dubnow's favor. Instead, the PDUSH ignored

an entire artillery battery of evidence supporting the exercise of Dr. Dubnow's

professional judgment. (Appellant Br. 31-32.)

Because there is no evidence that Dr. Dubnow's conduct fell below the standard

of care — and instead the undisputed evidence is that Dr. Dubnow's conduct met the

standard of care — the Court should reverse the PDUSH's decision to reverse the DAB.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's affirmance of the PDUSH's decision, vacate the PDUSH's decision, and remand the matter to the PDUSH with instruction to adopt the DAB's decision in Dr. Dubnow's favor. In the alternative, the Court should vacate the PDUSH's decision and remand the matter to the PDUSH with the instruction to reconsider the matter under the appropriate "clearly contrary to the evidence" standard and to issue a new decision with a clearly articulated basis, allowing for meaningful judicial review.

Respectfully submitted,


/s/ *Jamie A. Gliksberg*
Jamie A. Gliksberg
CROKE FAIRCHILD MORGAN & BERES LLC
180 N. LaSalle St., Suite 2750
Chicago, IL 60601
(312) 768-4700

*Counsel for Plaintiff-Appellant*
*Jeffrey Dubnow*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,939 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 12-point Palatino Linotype font (11-point footnotes).

Dated:  July 26, 2021

/s/ Jamie A. Gliksberg
_____
Jamie A. Gliksberg
CROKE FAIRCHILD MORGAN & BERES LLC
180 N. LaSalle St., Suite 2750
Chicago, IL 60601
(312) 768-4700

*Counsel for Plaintiff-Appellant*
*Jeffrey Dubnow*

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the NextGen CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the NextGen CM/ECF system.

/s/ *Jamie A. Gliksberg*
Jamie A. Gliksberg